## CHANDLER vs. MONTGOMERY COUNTY.

1. APPEAL : *Power of the Circuit Court when defectively taken.*
   Where the record, in a proceeding that originated before a Board of Supervisors, does not show that an appeal was granted to the Circuit Court, but it appears that an authenticated transcript of the proceedings before the board was before the Circuit Court, and the cause was treated by the court and parties as if regularly there, on appeal, the court could, upon the transcript, make any appropriate order in the case.

2. TOLL BRIDGE: FRANCHISE: *Power of the County Court; Police power, etc.*
   The County Court is empowered, under the Statute, to grant a charter to build and maintain a toll bridge, but a franchise so granted is subject to the police power of the State, and a subsequent Statute empowering the County Court to require of the toll keeper a bond, with security, to keep the bridge in repair, and pass persons and stock safely and without detention, was a reasonable exercise of the police power and did not impair his franchise.

3. SAME: *Duty of County Court as to the bond of toll keeper.*
   When a keeper of a toll bridge, under an order of the County Court, files a bond conditioned to keep the bridge in repair, safely cross passengers, etc., it is the duty of the Court, if the bond is good in form, and the security

sufficient, to approve it, or, if defective in either respect, to point out the defect and afford him reasonable opportunity to perfect it.

4. SAME: *How the franchise revoked.*

The County Court is not authorized, upon the rejection of a bond filed by the keeper of a toll bridge, under Section 640 of Gantt's Digest, to revoke his charter and order the destruction of the bridge. If the failure to file a sufficient bond is cause of forfeiture, it could only be ascertained and declared by a proceeding in the name of the State in the nature of *Quo warranto.*

APPEAL from *Montgomery* Circuit Court.

Hon. L. J. JOYNER, Circuit Judge.

*A. B. Williams*, for appellant.

ENGLISH, CH. J.:

From the transcript in this case it appears:

That on the 5th day of July, 1870, the County Court of Montgomery County, granted a charter to M. M. Chandler (under chapter 171, Gould's Digest) "to build a toll bridge along the East side of the Caddo River, known as the Caddo Gap Narrows, on the Arkadelphia and Mount Ida road." The order declared that Chandler, his heirs and assigns, should have exclusive privilege of said charter for thirty years from the date of the grant; and established the rates of toll to be charged for crossing the bridge, etc.

It was also ordered that Chandler enter into bond for the completion of the bridge before the first Monday of January, 1871, etc.

At the October term, 1871, Silas P. Vaught represented to the court that he was one of the sureties of Chandler, on the bond executed by him for the faithful building and keeping of the bridge, etc., and asked to be released; and the court made an order releasing him, and directing that Chandler be notified to appear before the Clerk within twenty days and give additional security.

Chandler vs. Montgomery County.

At the same term of the court, citizens appeared, and complained to the court that the toll bridge at Caddo Gap Narrows was insecure and unsafe for the passage of stock and vehicles; whereupon the court (without notice to Chandler) proceeded to summon and examine witnesses, and to declare the bridge unsafe, etc., and ordered Chandler to be notified to put the bridge in good condition within forty days, etc.

On the 7th of July, 1873, the following order was made by the Board of Supervisors, (which had been substituted for the County Court):

"Ordered by the Board that M. M. Chandler, who owns and and keeps a toll bridge at Caddo Gap, be required to enter into bond unto the president of the Board of Supervisors, as provided by Section 19 of an act entitled 'An Act to establish a Board of Supervisors in each County in this State,' approved April 3d, 1873. Said bond to be given in the sum of $5,000, and filed in the office of the County Clerk, etc., within thirty days from the date of the service of this order; and that the Sheriff be required to serve a copy of this order on said Chandler within twenty days from this date."

It appears that the Clerk issued a copy of the order on the 15th which was served on Chandler on the 24th of July, 1873; and on the 23d of August following, he filed in the Clerk's office a bond executed by himself as principal, and six persons as sureties, in the penal sum of $5,000, payable to the president of the Board of Supervisors, and his successors in office, conditioned (after reciting his charter, describing his bridge, etc.) that he would "keep said toll bridge in good and safe condition for the passage of persons, wagons, carriages, and stock over and across said bridge, and in all things well and truly observe, perform and fullfil the laws of the State, etc., regulating and governing keepers of toll bridges," etc.

Chandler vs. Montgomery County.

On the 30th August, 1873, the Board of Supervisors held a called session, and examined, disapproved, and rejected the bond.

For what cause the bond was rejected does not appear in the order.

At the same meeting of the Board, the following order was made :

". It appearing to the Board that M. M. Chandler, having a license to keep a toll bridge through Caddo Gap, etc., failed to fill the requirements of the law in relation thereto, and having failed to file a good and approved bond as the lawful order of this Board required and demanded. It is by the board ordered that the license of said Chandler be revoked, and that unless he shall on or before the first day of the next regular meeting of this Board, file a good and sufficient bond in the sum of $5,000 and in due form, the same to be approved by the president of this board in vacation, then, in the event of his failure so to do, the overseer of the road district in which said bridge is situated shall remove said bridge as an obstruction; and further that a copy of this order be served on said Chandler, or left at his place of business, and also a copy to the overseer of the road district in which said bridge is now located."

After the above order, the following entry appears :

"Now on this day comes S. Jones for M. M.Chandler, and gives notice that he will appeal from the order of this board in relation to the toll bridge at Caddo Gap."

"Comes also Z. L. Cotton, attorney for the county, and states that he waives all informalities as to notice."

A transcript of the foregoing proceedings of the County Court and Board of Supervisors, made out and certified by the Clerk was filed in the office of the Clerk of the Circuit Court on the 15th September, 1873, and the case docketed as if on appeal from the Board of Supervisors.

At the September term of the Circuit Court, 1873, and after the transcript was filed, and the case docketed, Chandler filed a motion for a supersedeas as follows:

" M. M. Chandler comes and says that in violation of his chartered privilege heretofore granted, under the laws of the State, said Supervisors have required him to enter into bond not justified by the laws of the land at the date of his charter.

" That because he failed to execute such bond as the Board of Supervisors would approve, they have ordered and directed that said bridge be destroyed and removed.

" That said proceedings are in manifest violation of his chartered privileges, of the constitution of the State, and the laws of the land.

"Wherefore he prays the court to supersede said orders and hold them for naught, and for other relief."

On the filings of this motion, it was agreed by Chandler and the attorney representing the county, that a temporary supersedeas might issue, and that until the next term of the court, or until the further order of the court, Chandler might demand and receive certain rates of toll, which are set down in the entry, and are much lower than those allowed in the original order granting the charter.

At the February term, 1875, the attorney for the county moved to strike out Chandler's motion for supersedeas, and the court took the matter under advisement until the next term.

At the August term, 1875, the case was heard upon the transcript, and motions theretofore filed, and the court over-ruled Chandler's motion for a supersedeas, and affirmed the judgment of the Board of Supervisors, and said judgment was made the judgment of the Circuit Court as fully as if set forth anew, and it was adjudged "that said privilege, with all immunities thereto pertaining, of said defendant, Chandler, to keep said toll bridge,.

be and the same is hereby revoked, rescinded, and held for naught," etc.

Chandler moved for a new trial, which was refused, and he excepted, and appealed to this court.

It does not appear that the Board of Supervisors granted Chandler an appeal to the Circuit Court (Gantt's Digest, secs. 705-6, 1193), but the parties and the court seem to have treated the case as if regularly there on appeal.

An authenticated transcript of the proceedings in the inferior court was before the Circuit Court, and upon it, by consent of parties, a temporary supersedeas was granted; and the court could, upon such transcript, have made any appropriate subsequent order, which it was competent to make.

The charter of the appellant was granted to him to build and keep a toll bridge, by the County Court, under chapter 171, Gould's Digest, and the grant vested in him, his heirs, etc., a privilege or franchise to be exercised and enjoyed for thirty years, from the date of the grant. The County Court was empowered to make such grant by the legislature.

By the Act of April 3d, 1873, abolishing the County Courts, and substituting Boards of Supervisors, the Boards were authorized to require and compel any person, then or thereafter, owning a toll bridge, etc., to give bond and good security, in such sums as the Board might deem sufficient, etc., conditioned that he would keep such bridge, etc., in good repair, etc., and so attend the same as to pass all persons, their horses, stock, carriages, etc., in safety and without detention. Gantt's Digest, sec. 640.

This was but a reasonable exercise of the police power of the State, for the safety and protection of the community and traveling public, and was not a curtailment or infringement of the charter rights, or franchise of the appellant. Cooly on Con. Lim., pp. 576-7.

The Board of Supervisors had authority to require the appellant to give the bond prescribed by the statute, but where the bond was presented, if good in form and the sureties sufficient, it should have been approved, and if deemed defective in either respect, the Board should, in fairness, have indicated the defect, and afforded the appellant a reasonable opportunity to perfect the bond.

On the rejection of the bond filed by the appellant, the Board undertook to revoke his charter; and then directed that unless he filed a good and sufficient bond, on or before the next term of the court, to be approved by the president of the Board in vacation, the overseer of the road should remove his bridge as an obstruction.

The road overseer, an executive officer, was to ascertain appellant's failure to give the bond, and destroy his property, without any judicial condemnation. This was not permissible under the Bill of Rights, (Constitution of 1868, art. 1, sec. 9). *State* v. *Carnall*, 10 Ark., 156.

The legislature did not authorize the Board of Supervisors to revoke appellant's charter, on his failure to give the required bond. If such omission would be a cause of forfeiture, as perhaps it would, the proper mode of ascertaining the default, declaring the forfeiture, and siezing the franchise, is by suit in the Circuit Court, in the name of the State, in the nature of a *quo warranto*, under the provisions of chapter 133, Gantt's Digest. *State* v. *Carnall*, ubi. Sup.; *State* v. *Evans*, 3 Ark., 588; Angel & Ames on Corp., secs. 777-8; 3 Kent Com., marg. p. 458, etc.; *State* v. *Ashley*, 1 Ark. 304; Marr, *ex parte*, 12 Ark., 85.

Nor had the Circuit Court power to revoke appellant's charter, in this proceeding on appeal from the Board of Supervisors.

The judgment of the Circuit Court must be reversed, and the cause remanded with instructions to the court to supersede so much of the order of the Board of Supervisors (now County Court) as revokes the charter of appellant, and so much as directs the road overseer to remove his bridge, and to remand the cause to the County Court, that it may make appropriate orders in relation to the bond of appellant, etc.

With liberty to the State to institute a proper suit to ascertain whether the charter be forfeited, etc., if she shall think proper to do so.